## WILLIAMS et al. v. POMES.
### No. 17053.

Court of Appeal of Louisiana. Orleans.
March 13, 1939.

E. B. Charbonnet, Jr., of New Orleans, for appellant.

Cabral & Graham, of New Orleans, for appellees.

McCALEB, Judge.

These seven suits, which were consolidated below for purposes of trial, grow out of a collision between a truck owned by Firmin E. Pomes and a passenger omnibus of the New Orleans Public Service, Inc., which occurred on the highway in Jefferson Parish near Betz Avenue.

The seven plaintiffs were passengers in the public omnibus and sue for damages for physical injuries resulting from the accident which they allege was caused by the negligence of the driver of the Pomes truck. Each plaintiff sues for $300, the jurisdictional limit of the First City Court of New Orleans in which the actions were filed.

Following a trial below there were separate judgments rendered in favor of each of the plaintiffs in various amounts, all of which were for less than the sums they claimed. The defendant has appealed from the adverse decisions. The cases were docketed in this court under one number and were argued and submitted as consolidated suits.

The accident took place on the Jefferson Highway near its intersection with Betz Avenue in the Parish of Jefferson. The omnibus of the New Orleans Public Service, Inc., in which the plaintiffs were passengers, was proceeding on the riverside roadway of the highway from the Huey P. Long Bridge toward the City of New Orleans. The defendant's truck was being operated by his employee in the same direction. The Jefferson Highway is a paved double thoroughfare separated by a neutral ground but, at the time of the accident, the roadway ordinarily used by outbound traffic proceeding from the City of New Orleans was closed and vehicles were being permitted to travel in either direction over the inbound traffic lane.

The version of the accident presented by plaintiffs and by defendant respectively differ to an unusual degree, almost to the point of describing a different occurrence. According to the plaintiffs, the omnibus was traveling along the Jefferson Highway with the Pomes truck behind it in the same traffic lane; that when the omnibus approached Betz Avenue, it slowed up with the intention of picking up a passenger, being at that time about 125 feet away from its stopping place; that the driver, Sentilles, hand-signalled his intention to stop, but notwithstanding this warning, the Pomes truck maintained its speed and subsequently increased it, this fact being made evident to Sentilles by reason of his rear view mirror, with the result that he changed his plan and instead of stopping for the passenger continued on in order to abate the violence of the blow from the collision which appeared imminent and that the Pomes truck crashed into the rear of the

bus with great force, at a point approximately a bus length past Betz Avenue, damaging it and injuring the plaintiffs. This statement of the accident is given by the bus driver, Sentilles, and by Mike Pizzolato, one of the injured bus passengers.

On the other hand, Edward Claiborne, the truck driver, asserts that he was driving along the highway from the Huey P. Long Bridge in the direction of New Orleans at a slow speed; that, prior to the time he reached Deckbar Ave., he was proceeding ahead of the Public Service bus and several other automobiles; that the drivers of the vehicles in the rear of his truck were blowing their horns because the slow gait, at which he was traveling, was delaying them and that he accelerated his speed to 25 or 30 miles per hour in order that he would not unduly impede their progress. He further states that, after he had driven past the corner of Deckbar Ave., the omnibus overtook his truck; that it passed him between Deckbar Ave. and Betz Ave. and that, just as soon as it had barely advanced ahead of him, the bus driver swerved it sharply to the right directly in front of his truck and brought it to a sudden stop shortly past the Betz Avenue intersection. He declares that the bus driver gave him no warning of the fact that he intended to make a stop; that he could not anticipate the unexpected swerve and stop of the bus directly in his path and that, although he applied his brakes as quickly as possible, he was unable to avoid striking the bus in the rear. The testimony of Claiborne is fully corroborated by the evidence of Whitmore Young who was a passenger on the truck at the time the accident happened.

It will be seen from the foregoing that it is impossible to reconcile the existing conflict in the testimony produced by the litigants in the case. The trial judge believed that the evidence submitted by the plaintiffs preponderated. We are unable to coincide with his conclusion.

A comparison of the opposing theories regarding the cause of the accident has been sufficient to convince us that the evidence produced by the defendant offers a reasonable basis upon which the truth may stand. Conversely, we find that the declarations of Sentilles and Pizzolato are fanciful and are discordant with the plausible probabilities to which we must give consideration in our search for the correct solution of the repugnant evidence. If we accepted the story of plaintiffs' witnesses, we would be compelled to resolve that Claiborne, the truck driver, either deliberately ran into the rear of the bus or that he had a temporary mental lapse during which time he was without control of his faculties. Such a result is, we think, not justified in the face of the positive testimony of the truck driver whose statement of the occurrence impresses us favorably.

Counsel for plaintiff nevertheless contends that the defendant's evidence exhibits that the truck driver was not free from fault. If such be the case, the plaintiffs are entitled to recover from the defendant notwithstanding the negligence of the omnibus driver. It is the view of our brother below that the testimony of defendant's witnesses is of itself sufficient to warrant the conclusion that Claiborne actually raced the bus when the latter was attempting to pass his truck on the highway. This deduction is based upon a statement by defendant's witness Young to the effect that, when the bus pulled out from behind the truck and started to pass the latter, the vehicles ran side by side for the space of about a half block and also upon an assertion made by Claiborne that he increased his speed after the motorists in his rear had blown their horns as notice to him that they desired to pass the truck.

We cannot view the declarations of the defendant's witnesses in this light. Our appreciation of their testimony is that the truck was proceeding at a slow rate of speed of between 15 to 20 miles per hour; that the bus and some other automobiles in the rear (being operated at a more rapid speed) wished to pass but that they could not do so on account of the presence of traffic coming from the opposite direction; that, in order to avoid the traffic congestion in the rear, Claiborne accelerated the velocity of his truck to 25 or 30 miles per hour and that he maintained that speed at the time the omnibus attempted to pass him. We are not persuaded that this evidence justifies the inference that Claiborne increased the speed of his truck while the omnibus was attempting to pass him. And the fact that it took the bus approximately a half block to overtake and pass the truck is not sufficient to disclose negligence on the part of the truck driver.

A careful review of the evidence has convinced us that the accident was caused solely through the fault of the operator of the Public Service bus in that he violated Rule 7, Paragraph (a), § 3, of Act No. 21 of 1932, which provides: "(a) The driver of any vehicle over-taking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle."

The facts of this case bear a strong resemblance to the situation appearing in the matter of Dupuy v. Godchaux Sugars, Inc., et al., 184 So. 730, 733, recently decided by us, where we said: "On the other hand, if Henry Dupuy, in attempting to drive around the Godchaux truck, found at the last instant that he could not do so and was required to suddenly stop in front of the Godchaux truck and before completely regaining his proper place on the road, the driver of the Godchaux truck could not be said to have been negligent in not completely extricating himself from the emergency created entirely by the other driver, or by other drivers."

Here, we find that Sentilles, having overtaken the defendant's truck, swerved the omnibus sharply in front of it and attempted to make a sudden stop in order to take on a passenger without realizing the close proximity of the two vehicles. In so doing, he placed the truck driver Claiborne in an emergency from which the latter was unable to liberate himself by the timely application of his brakes. The situation in which the truck driver found himself was brought about exclusively through the carelessness of Sentilles and we conclude that Claiborne did all that could be required of a prudent man under the existing circumstances.

For the reasons assigned, the judgments appealed from are reversed and it is now ordered, adjudged and decreed that the plaintiffs' suits be and they are dismissed at their costs.

Reversed.